IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 13-cv-02066-LTB

MANDI LOLLAR,

        Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

---

ORDER

---

Plaintiff, Mandi Lollar, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE the Commissioner's final order and I REMAND for additional proceedings.

## I.  STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her applications for disability insurance benefits and for supplemental security income filed in December of 2007. [Administrative Record ("AR") 185, 189] After the applications were initially denied on August 4, 2008, an Administrative Law Judge ("ALJ") conducted an evidentiary hearing on

March 25, 2010, and issued a written ruling on June 2, 2010. [AR 46-60, 66-77, 87] The ALJ denied her applications on the basis that she was not disabled because Plaintiff retained the residual functional capacity ("RFC") to perform a range of medium physical work, but with no complex tasks and no dealing with the general public, and thus could perform other jobs that existed in significant numbers in the national economy (Step Five). [AR 63-82]

The SSA Appeals Council subsequently vacated the ALJ's decision, on the basis that: 91) the ALJ did not properly evaluate drug addiction and alcoholism; 2) the ALJ failed to adequately consider the "B" criteria ratings after finding that Plaintiff had severe mental impairments; and 3) the ALJ's decision contained only a cursory statement (with no rationale or reference to supporting evidence) regarding whether Plaintiff's impairments met or equaled a listing.  As such, the SSA Appeals Council remanded for further administrative findings of fact. [AR 84-86]

The ALJ conducted a second evidentiary hearing on June 1, 2012. [AR 35-45] The ALJ issued a second decision, on July 8, 2012, again finding that Plaintiff was not disabled in that she retained the residual functional capacity ("RFC") to perform medium work, which should not involve complex tasks (of a SVP of 2 or less) and requires no more that occasional dealing with the general public, and thus could perform other jobs that existed in significant numbers in the national economy (Step Five). [AR 15-28] The SSA Appeals Council denied Plaintiff's administrative request for review of this determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1]  *See* 20 C.F.R. § 416.1481.  Plaintiff timely filed her complaint with this court seeking review of the Commissioner's decision.

## II. FACTS

Plaintiff was born on December 13, 1980. [AR 160, 185, 188] She has obtained a high school education via G.E.D. [AR 43, 147] Her past relevant work history was as a telemarketer, fast food worker, retail sales clerk, cook's helper, kitchen helper, order clerk and front desk clerk. [AR 27, 76] Plaintiff alleged that she became disabled due to depression, bipolar disorder, head injury, a plate in her right arm, a pin in her leg, and back pain. [AR 242] During her initial hearing before the ALJ, Plaintiff amended her alleged onset disability date to December 1, 2008. [AR 49, 66]

While the medical records reveal various physical maladies, Plaintiff only challenges the ALJ's determinations related to her mental impairments and the effect of those impairments on her ability to work. The records reveal that Plaintiff presented to Spanish Peaks Mental Health Center in April 2007, after a Department of Social Services (DSS) dependency and neglect intervention in her home, and was subsequently referred for a behavioral health evaluation and therapy. [AR 337-38, 346] The clinical records from this time show a report of depression and substance abuse, a possible bipolar disorder, and an assessed Global Assessment of Functioning (GAF) of 55, indicating moderate symptoms or moderate difficulty in social or occupational functioning. [AR 23, 346-53] The Spanish Peaks records reveal that Plaintiff participated in individual counseling from C. Kim Johnson, from May of 2007 through January of 2008, as required by her DSS caseworker. [AR 295-345] Plaintiff continued to seek therapy from Kim Johnson after her DSS case was closed in May of 2008. [AR 453-64] Plaintiff received medication management from Margaret Montoya, RN, at Spanish Peaks, from April 2007 through September of 2008. [AR 297-334]

On May 6, 2008, Steven Martin, M.D., performed a consultative psychological examination of Plaintiff. [AR 361-63] After noting that Plaintiff's mood was "essentially normal," and that she was oriented, had intact long-term and short-term memory, and intact concentration and judgment, Dr. Martin concluded that Plaintiff's reported mood changes did not fit the criteria for "bipolar mood disorder." [AR 362-63] Rather, he diagnosed "dementia, secondary to closed head injury, very mild" and "mood disorder, not otherwise specified." He also diagnosed "borderline personality trait" and assessed a GAF of 55-65. [AR 363] Dr. Martin opined that Plaintiff had moderate limitations in the ability to understand and remember locations, simple instructions, and detailed instructions, but her other abilities were not limited. [AR 363] He also opined that she may be moderately to markedly limited in her ability to carry out a regular work week, work month, and work day. [AR 363]

On June 16, 2008, the state agency physician, Donald G. Glasco, M.D., determined that Plaintiff suffered from dementia, very mild, "secondary to CHI;" mood disorder, nos; and borderline personality traits. [AR 369-76] Dr. Glasco opined that she experienced moderate difficulties in maintaining concentration, persistence and pace, and mild difficulties in maintaining social functioning and mild restriction of activities of daily living. [AR 379]

On November 20, 2008, about two weeks before the relevant time period, Ms. Johnson completed a Functional Capacity Evaluation (mental) form in which she rated Plaintiff as having "slight" limitations (or generally functions well) in understanding, remembering, and carrying out short, simple instructions, but also rated Plaintiff as having "marked" limitations (severely functionally limited, but not precluded) and "extreme" limitations (no useful functional ability) for many of the other criteria listed on the form including: the ability to maintain attention and

concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. [AR 402-03] Ms. Johnson concluded that Plaintiff would be able to understand, remember and carry out simple instructions, make judgment in unskilled work and respond appropriately to other with part-time work, "under limited stress," and could only deal with very limited changes in a routine work setting. [AR 403]

Jessica Cummings, PMH NP, a nurse practitioner, saw Plaintiff for medicine management at Spanish Peaks from September 2009 until June 2010. [AR 433-45] At her initial interview with Plaintiff, Ms. Cummings found that Plaintiff's symptoms appeared to be well managed with medications, and she assigned Plaintiff a GAF of 73. [AR 444] Ms. Cummings filled out a Functional Capacity Evaluation (Mental), dated March 1, 2010, in which she opined that Plaintiff was markedly limited in her ability to understand, remember and carry out very short and simple or detailed instructions, and in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. [AR 469] Ms. Cummings opined that Plaintiff was extremely limited in her ability to remember locations and work-like procedures, her ability to understand and remember detailed instructions, and her ability to maintain attention and concentration for extended periods of time. [AR 469] She also opined that Plaintiff would not be able to perform work related mental activities for an 8 hour, five-day work week. [AR 470]

The medical records from this time also include a Functional Capacity Evaluation (Mental), dated February 19, 2010, filed out by Tammera L. Park, P.A.-C. [AR 467-68] This report indicates numerous areas in which Plaintiff's abilities were moderately or markedly

5

restricted, as well as extremely restricted in her ability to maintain attention and concentration for extended periods, and her ability to work in coordination with or in proximity to others without being distracted by them. [AR 467] Ms. Park also opined that a five day work week "would not be do-able for her." [AR 468]

Plaintiff was then discharged as a patient from Spanish Peaks Mental Health Center on September 14, 2010, for failure to participate in her treatment with therapist Brenna Cline, M.A. NCC, and non-compliance with medications. [AR 474] Ms. Cline assessed Plaintiff with a GAF of 65 at discharge. [AR 474] Eileen Spangler, a psychiatric nurse practitioner, managed Plaintiff's medications from October 2010 until September 2011. [AR 489-506].

Plaintiff subsequently re-enrolled as a patient at Spanish Peaks Mental Health Center in June 2011, when she was assessed with a GAF of 60, but was again discharged at the end of October 2011 for failure to engage in treatment. [AR 472-488]

## II. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If

she is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

In his initial ruling on June 2, 2010, the ALJ concluded that Plaintiff was not disabled because she retained the RFC to perform other jobs that existed in significant numbers in the national economy at Step Five of the sequential process. [AR 76-77].

After remand from the SSA Appeals Council, the ALJ again determined that Plaintiff was not disabled. [AR 15-28] In so doing, he first found that Plaintiff had not engaged in substantial

gainful activity since her alleged onset date (Step One). [AR 17] The ALJ further determined that Plaintiff had the severe impairments of anxiety, affective disorder, personality disorder, and obesity (Step Two), but that these impairments did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 19 ] The ALJ then determined that Plaintiff had the RFC to perform medium work that did not require dealing with the public more than occasionally or performing complex tasks, but that she could perform tasks with a specific vocational preparation (SVP) of 2 or less, and General Educational Development (GED) levels of 1 or 2. [AR 22] Based on this assessed RFC, the ALJ found that Plaintiff was not capable of performing her past relevant work (Step Four). [AR 27] The ALJ went on to find, however, that Plaintiff could perform other jobs that existed in significant numbers in the national economy (Step Five). [AR 27] As such, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the SSA. [AR 28]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a

preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981). With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI.  ISSUES ON APPEAL

On appeal, Plaintiff argues that the ALJ made several legal errors in his order warranting remand. While I agree with the Commissioner that each individual error, when viewed independently, may not rise to the level of reversal, I find that the commutative effect requires that the ALJ address them on remand.

Plaintiff contends that the ALJ erred when weighing the medical opinion evidence in the record. In his order, the ALJ "adopted" the June 2008 opinion of Dr. Glasco, the state agency physician, that Plaintiff had "mild restrictions in the claimant's activities of daily living; mild restrictions in the ability to maintain social functioning; and moderate limitations maintaining concentration, persistence or pace," based on the medical records that show "the claimant to be oriented and appropriate with a full range affect;" "her thinking was appropriate and goal directed and her speech was normal;" and she "had good recall and her [GAF] showed only mild to moderate difficulty in social or occupational functioning." [AR 25]

> With regard to the opinion of Dr. Martin, sated May 2008, the ALJ stated that:
>
> Dr. Martin stated that the claimant had, at most, moderate limitations in her ability to understand, remember, and carryout simple or detailed instructions. Her ability to sustain concentration and persistence, perform activities with a schedule, sustain an ordinary routine, and to make simple work-related decisions was not significantly limited. Her social interaction, interaction with the general public, ability to ask simple questions, and her ability to cooperate with co-workers and peers was not limited. The claimant's ability to maintain socially appropriate behavior was not limited. She did not have any significant limitations in her ability to adapt to normal hazards, work setting changes, or to set realistic goals. She would have limitations in carrying out a regular workweek because of her characterological issues. Dr. Martin stated the claimant has some mild to moderate symptoms or some difficulty in social and/or occupational functioning. [AR 24-25]

The ALJ ruled that he "accepts Dr. Martin's assessment, however, to allow the claimant all possible benefits of doubt, [I] will limit interaction with the general public to occasion and limit her to complex work tasks." [AR 25]

As to Ms. Johnson's mental assessment of Plaintiff, dated November of 2008, the ALJ gave this opinion no weight "as it is not compatible with or supported by the record of evidence and there are no treatment notes or clinical findings cited to support these extreme limitations" and, in addition, "Ms. Johnson is not an acceptable medical source." [AR 25] The ALJ also gave no weight to Ms. Cummings' Functional Capacity Assessment (Mental), dated March 2010, as she "is not an acceptable medical source and the extreme limitations given in the assessment are not supported by examination or treatment records. . . ". [AR 25]

To the extent that Plaintiff argues that the ALJ erred in rejecting the opinions of Ms. Johnson and Ms. Cummings, I disagree. The ALJ rejected these opinions on the basis that the records at Spanish Peaks did not support them, and my review of those clinical records reveals abundant support for that conclusion. The ALJ's order sets out, in significant detail, the

evidence in the Spanish Peaks records and treatment notes which does not support the severity of impairment alleged by Plaintiff and her treatment providers. [AR 22-25]

However, Plaintiff also argues that the ALJ erred in "accepting" Dr. Martin's opinions regarding her functional abilities, but then failing to consider or include in her RFC the assessed restriction that she may be moderately to markedly limited in her ability to carry out a regular workweek, work month, and workday. [AR 363] I agree that the ALJ erred in his failure to address this important restriction, particularly when it is echoed in the record by other opinion evidence. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) (ruling that an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of non-disability).  I am not persuaded by the Commissioner's unsupported argument that the ALJ's failure to include this limitation in Plaintiff's RFC "implicitly demonstrated that the ALJ declines to give weight to that limitation" and "by virtue of make an RFC determination, the ALJ implicitly found that Plaintiff retained the ability to perform work on a regular and continuing basis."

Additionally, I likewise reject the Commissioner's claim that the ALJ's complete failure to address Ms. Park's opinion related to Plaintiff's mental restrictions, set forth in her assessment dated February of 2010, is an "oversight that does not amount to reversible error."  Although the assessed limitations were minimally consistent with the ALJ's RFC findings, most of Ms. Parks' opinions were not.  I disagree that the ALJ's express rejection of similar extreme limitations expressed by Ms. Johnson and Ms. Cummings in their opinions, can be applied to the opinions of Ms. Park's absent any consideration or analysis in the ALJ's order.

Finally, I note that Plaintiff provided lay witness opinions regarding her ability to work –

in the form of letters from her brother, mother, and a friend – which were not weighed or addressed by the ALJ in his order. [AR 280-82]  To the extent that the SSA Commissioner argues that there is no error because the ALJ explicitly addressed and rejected these opinions in his previous order, it is undisputed that the prior order was subsequently vacated by the Appeals Council.  Although the ALJ considered this opinion evidence when making his prior decision, I disagree with the SSA Commissioner that the fact that the ALJ failed to discuss these opinions in the decision on review here "does not warrant remand."

ACCORDINGLY, for the foregoing reasons, I REVERSE the Commissioner's final order, and I REMAND the matter to the Commissioner for further proceedings consistent with this order and judgment.

Dated: April   21  , 2015 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE